UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 18-097-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 21-132-DCR |
| | ) | |
| GARRY SEAN RAMONE DRAKE, JR., | ) | **MEMORANDUM ORDER** |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On October 18, 2021, the Court denied Defendant Garry Drake's *pro se* motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 based on claims of ineffective assistance of counsel. [Record Nos. 71, 72] Thereafter, Drake filed a *pro se* motion to set aside the Court's Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. [Record No. 73] Drake has not presented any newly-discovered evidence or established that there was a clear error of law, an intervening change in controlling law, or that reconsideration is needed to prevent manifest injustice. As a result, the motion for reconsideration will be denied.

In November 2018, Drake pleaded guilty to distributing a mixture or substance containing fentanyl, the use of which resulted in the overdose death of Mason Reppen. Drake admitted that, on November 28, 2017, he distributed 4 grams of a mixture or substance containing fentanyl to Phillip Jennings who, in turn, sold 200-300 milligrams of the mixture containing fentanyl to Reppen on November 30, 2017. Drake further admitted that the fentanyl he distributed to Jennings was ingested by Reppen, causing Reppen to fatally overdose.

On March 1, 2019, Drake was sentenced to 300 months' imprisonment, to be followed by a three-year term of supervised release.  His sentenced was affirmed on appeal.  Drake subsequently filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that his retained attorneys, G. Scott Hayworth and James I. Lowry, IV, had provided ineffective assistance.  However, the Court denied Drake's motion in a 23-page opinion that examined each of Drake's ineffective assistance claims in detail.  The undersigned determined that Drake failed to show that his attorneys' performance was in any way constitutionally deficient or that he was prejudiced by their handling of his case.  *See Strickland v. Washington*, 466 U.S. 668 (1984) (establishing the standard for evaluating claims of ineffective assistance of counsel).

As noted, Drake has filed a motion to vacate that decision pursuant to Rule 59(e).  "A court may grant a Rule 59(e) motion to alter or amend if there is (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

While a Rule 59 motion may not be used to relitigate issues of disagreement with the Court's initial ruling, that is essentially what Drake attempts to do here.  Specifically, he claims that attorneys Hayworth and Lowry were ineffective based on their alleged failure to investigate the victim's alleged purchase of fentanyl from China, as well as Jennings' background in drug trafficking.  However, as the Court observed in its prior opinion, Drake's counsel *did* investigate Reppen's and Jenning's other drug sources.  However, counsel explained in an affidavit that phone records established a direct line between Drake, Jennings,

and Reppen during the relevant time period.  Additionally, counsel recognized that Jennings would have testified against Drake at trial and his testimony would have been corroborated by phone records.

Drake also points to counsels' failure to retain an expert to rebut the opinions of the government's expert toxicological chemist Michael Ward.  Counsel for Drake consulted with Scott Haas, M.D., who reported that he did not "identify any issues that would have been useful to the defense at trial [] and did not dispute the toxicity of the level of fentanyl found in Reppen's jugular blood."  [Record No. 66-1, p. 3]  Drake now claims that Haas was not qualified to opine regarding toxicology issues and suggests that counsel did not actually consult with Haas.  However, these are issues that could have been raised in Drake's § 2255 motion.  He did not raise them there or in his reply to the government's response in opposition to the § 2255 motion.  Raising these issues for the first time here does not satisfy any of the criteria for reconsideration under Rule 59(e).

The Court also notes that the fentanyl concentration in Reppen's bloodstream was 17.4 ng./ml., which exceeds lethal concentrations.  *See United States v. Ewing*, 749 F. App'x 317, 328 (6th Cir. 2018).  As the Court explained previously, there is no indication that counsel would have been able to find an expert who could adequately rebut Ward's testimony even if they had considered a funding request under § 3006A(e)(1).

Finally, Drake asserts that his attorneys' alleged failure to review evidence with him resulted in manifest injustice.  Specifically, he reports that, while reviewing his record following his sentencing, he discovered text messages showing that Reppen "acknowledge[d] consuming the drugs obtained from [Drake]" at 8:00 p.m. on November 29, 2017.  According to Drake, Reppen messaged Jennings, "definitely dope not fent" and Jennings replied, "fo sho."

- 3 -

Reppen texted Jennings the following day, telling him he wanted "to grab another 40 from him." According to Drake, Reppen obtained more drugs from Jennings the evening of November 30, 2017, and was found dead the next day. [Record No. 73, pp. 6-7]

Attorneys are not required to review every piece of discovery with their clients. *See Strickland*, 466 U.S. at 688; *Gussner v. Gonzalez*, 2014 WL 2604632, at *13 (N.D. Cal. June 10, 2014). Drake is incorrect to the extent he suggests counsel were ineffective simply for failing to review certain text messages with him. Drake's allegation that he discovered a text message showing that Reppen "acknowlege[d] consuming the drugs obtained from [Drake]," is not compelling. He suggests that this shows that Reppen consumed the drugs he sold to Jennings, reported that they were not fentanyl, and lived to ask Jennings for more drugs the following day. However, these conclusory, out-of-context allegations are insufficient to establish that the substance Drake sold to Jennings was not fentanyl or that fentanyl from another source caused Reppen's death.

"Manifest injustice" means "[a]n error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution has rescinded." *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 330-331 (6th Cir. 2014) (quoting Black's Law Dictionary (11th ed. 2019). Drake has not demonstrated that the alleged text messages he cites are exculpatory or that they would have changed his decision to enter a guilty plea. Further, the content of these alleged messages does not detract from the factual basis set forth in Drake's plea agreement and do not render the plea involuntary. *See, e.g., Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985) (holding that prosecutor's failure to disclose potentially exculpatory evidence did not render guilty plea involuntary since new information did not detract from

factual basis the defendant admitted in his own statements at plea hearing).   Accordingly, Drake has not established manifest injustice.

In addition to the foregoing, Drake has summarily renewed his request for an evidentiary hearing.  However, the defendant has not presented any colorable claims for relief under Rule 59(e) and a hearing is not warranted.

Based on the above analysis and discussion, it is hereby

**ORDERED** that Defendant Garry Drake's motion for reconsideration [Record No. 73] is **DENIED**.

Dated: November 8, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky